# U.S. COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 25-1490

JOSE ARCENIO ARISTY-ROSA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of the Board of Immigration Appeals
Immigration Judge John P. Ellington, No. A043-907-039

Before: BIBAS, PORTER, and BOVE, *Circuit Judges*
Argued Jan. 27, 2026; Decided Aug. 14, 2026
_____

OPINION OF THE COURT


BOVE, *Circuit Judge*.  Petitioner Jose Arcenio Aristy-Rosa filed a Petition For Review challenging the BIA's refusal to revisit a final order of removal that was entered on consent in 2011.  Petitioner's removal is stayed pending resolution of the Petition.  Our work is not complete.  After soliciting the parties' views on the removal stay, however, we have determined that the record does not merit continuing the stay.  Mindful of the ongoing harms that such stays impose on the Executive Branch, and respectful of the impact of our operations on coordinate Branches of this tripartite

government, we write precedentially to explain (I) our decision to vacate the stay, and (II) our previous denial of Petitioner's motion to hold the proceedings in abeyance. *See* 3d Cir. IOP 5.2.

**I.**

Petitioner has been in the United States for almost 30 years. He has been subject to a final order of removal for about half that time. The removal order rests largely on Petitioner's 1997 guilty plea to a narcotics offense in New York State.

The Petition concerns Petitioner's fourth attempt to escape the removal order. *See Aristy-Rosa v. AG*, 994 F.3d 112, 117 (3d Cir. 2021).[1] This time, Petitioner challenges the BIA's denial of his first motion for statutory reconsideration, his second motion for statutory reopening, and his third motion for so-called "sua sponte" reopening. *See* 8 U.S.C. § 1229a(c)(6), (7); 8 C.F.R. § 1003.2(a). Petitioner's arguments rely heavily on *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), which he characterizes as a change in law that undermines the removal order. We will address that argument in a separate opinion. Here, with no disrespect to the prior stay decision, and mindful that we write from an advantageous perspective that includes supplemental briefing and oral argument, we hold that the current record does not merit continuing the stay of removal.

Any analysis of a removal stay must begin with the proposition that courts ought to tread lightly—on an ongoing

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

basis—when imposing this type of relief. Similar to preliminary injunctions, "[t]his extraordinary remedy" should not "become ordinary." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024). "[A] stay is not a vague, legally meaningless pause in a judicial proceeding." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 454 (3d Cir. 2020) (Porter, J., concurring in part and dissenting in part). By constitutional design, judicial review of agency action is "sensitive business deserving deference." *Qatanani v. AG*, 144 F.4th 485, 505 (3d Cir. 2025) (Matey, J., dissenting).

Just as our decisions are entitled to inter-branch respect, "the integrity of the administrative process must be equally respected." *United States v. Morgan*, 313 U.S. 409, 422 (1941). Actions by DHS and the Board are "entitled to a presumption of regularity." *McLeod v. INS*, 802 F.2d 89, 95 n.8 (3d Cir. 1986). A stay of removal is an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009); *see also Trump v. Slaughter*, 609 U.S. ----, 2026 WL 1855612, at *21 (2026) ("We do not allow intrusions on Article I nor on Article III. We see no reason to allow intrusions on Article II either.").

Because of the significance of such an intrusion, an alien seeking a removal stay bears the burden of proving four factors. *See Nken*, 556 U.S. at 426; *Douglas v. Ashcroft*, 374 F.3d 230, 233 (3d Cir. 2004). The first two factors are "the most critical": likelihood of success on the merits and irreparable harm. *Nken*, 556 U.S. at 434. Irreparable harm is not enough by itself. *See Curry v. Baker*, 479 U.S. 1301, 1302 (1986) (Powell, J., in chambers) ("It is no doubt true that . . . the applicant here will suffer irreparable injury. This fact alone is not sufficient to justify a stay . . . ."); *Blake v. AG*,

3

945 F.3d 1175, 1178 (11th Cir. 2019). The third and fourth factors are whether a stay would substantially injure other interested parties and the impact of a stay on the public interest. *Nken*, 556 U.S. at 426. These two factors merge because the government is the opposing party. *Id.* at 435.

A stay is not forever. Circumstances change. So too do our impressions of arguments and evidence as an appeal moves forward. "[J]udges will not always stick with those impressions—and the system trusts judges to update them as a case proceeds." *Del. State Sportsmen's Ass'n*, 108 F.4th at 200. Thus, an alien is entitled to a removal stay only for as long as he can demonstrate that the Executive Branch intrusion is appropriate. In this case, during our review of the Petition, we questioned whether Petitioner was still able to meet that burden. The parties responded with supplemental briefing and further addressed the issue at oral argument. Based on those proceedings, we conclude that Petitioner cannot now meet his burden on any of the four *Nken* factors.

**A.**

On the merits, Petitioner has to do more than suggest to us that *Minter* raised thought-provoking questions. He has not addressed the procedural challenges reflected in the Petition For Review and his underlying motions to the BIA.

An alien seeking a stay of removal must make a likelihood-of-success showing that is "significantly better than negligible but not necessarily more likely than not." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018). An alien must address not only the substantive arguments for relief but also our jurisdiction to consider them. *See Catney v. INS*, 178 F.3d 190, 196 & n.9 (3d Cir. 1999); *see also Mullin v. Doe*, 609 U.S.

4

----, 2026 WL 1825840, at \*11 (2026) (plurality opinion) ("[I]n evaluating the likelihood-of-success question for the purpose of ruling on a request for interim relief, courts may consider both the likelihood that they have jurisdiction and the likelihood that the claim will succeed on the merits."); *Flores v. Barr*, 977 F.3d 742, 746 (9th Cir. 2020); *Lim v. Ashcroft*, 375 F.3d 1011, 1012 (10th Cir. 2004). A court must deny interim relief—or vacate previously granted interim relief—if the court determines that it likely lacks jurisdiction.

In response to our inquiry about the removal stay, Petitioner failed to meet his merits burden with respect to sua sponte reopening. He did not even suggest that we had jurisdiction to review the BIA's denial of the motion. Any such argument would run headlong into our precedent. *See Pllumi v. AG*, 642 F.3d 155, 159 (3d Cir. 2011).

Petitioner's position on our jurisdiction to review arguments relating to statutory reopening and reconsideration is on firmer footing. *See Mata v. Lynch*, 576 U.S. 143, 147-48 (2015). But his statutory arguments faced several non-jurisdictional obstacles. As to statutory reconsideration, Petitioner did not address the time bar, the fact that we had never held that equitable tolling applies to these reconsideration requirements, or the elements of equitable tolling. *See* 8 U.S.C. § 1229a(c)(6). An alien seeking a removal stay based on a prediction about how we will apply existing precedent to an unresolved issue must explain why his prediction is more-likely-than-not correct under *Nken*. That has not happened here.

Petitioner also breezed past at least five impediments to his statutory reopening motion:

5

1. We have never held that a change in law is a basis for statutory reopening.

2. Despite this being Petitioner's second statutory motion to reopen, he does not address the number bar or the fact that we have never held that equitable tolling applies to that statutory limitation. *See* 8 U.S.C. § 1229a(c)(7)(A); *see also Luntungan v. AG*, 449 F.3d 551, 557 (3d Cir. 2006).

3. Although Petitioner's removal order became final in 2011, he does not address the time bar. *See* 8 U.S.C. § 1229a(c)(7)(C)(i).

4. Petitioner makes no effort to defend tolling's diligence requirement in the context of a record that reflects years-long gaps in his efforts to revisit the removal order. *See Mahmood v. Gonzales*, 427 F.3d 248, 253 (3d Cir. 2005) ("[P]eriods of unaccounted-for delay reveal a lack of diligence.").

5. Because *Minter* is from the Second Circuit, Petitioner in effect asks us to adopt *Minter*, expand the decision to reach immigration scenarios, apply it as an extraordinary circumstance for purposes of equitable tolling, and rely on it to uproot a final order of removal.

An alien cannot meet his merits burden based on a "significantly better than negligible" showing on one of these issues, or even several of them. *Holland*, 895 F.3d at 286. Overall likelihood of success is the product of likelihood of success on each independent issue. This is a "mathematical truth." *Herrera-Juarez v. Blanche*, 2026 WL 1147182, at *2

6

(4th Cir. 2026) (Quattlebaum, J., dissenting from grant of stay pending appeal); *see also Lopez-Sorto v. Garland*, 103 F.4th 242, 254 (4th Cir. 2024); *Velasquez-Samayoa v. Garland*, 49 F.4th 1149, 1155 (9th Cir. 2022) ("[W]hen an applicant posits *a single theory* for why he would be tortured, but the torture will come about only if several hypothetical events all occur in sequence, an applicant must show, at a minimum, that the individual probability of each event occurring is greater than 50 percent."). No calculator is necessary for this one. Even if Petition had demonstrated a better-than-negligible chance of success on the *Minter* arguments, which we will resolve later, his failure to address the first four issues relating to statutory reopening means he does not do enough to meet his burden on the merits factor.

**B.**

Petitioner does not demonstrate a sufficient risk of irreparable harm either. Counsel argues that "Petitioner reasonably fears that he will [be] taken into custody and expeditiously removed" at a scheduled meeting with DHS relating to his supervision while on bail. ECF20 at 1. Unsubstantiated arguments about a regularly scheduled meeting suggest little more than a *possibility* of removal. A "possibility" of irreparable harm will not cut it, and removal is not "categorically irreparable." *Nken*, 556 U.S. at 435. Thus, Petitioner's speculative concern about the meeting does not merit an intrusion on the activities of the Executive Branch.

Petitioner also makes general arguments relating to family separation and dubious claims about the government's ability to facilitate his return should he prevail. Talk is cheap. Evidence persuades. Presenting arguments regarding family circumstances in an unsworn brief, unsupported by evidence,

7

will rarely suffice to establish irreparable harm. That proposition proved true here as we take a fresh look at the stay. Beyond the common challenges associated with family separation in connection with a removal, Petitioner does not describe any problems specific to his family. The only family-related evidence in the record now before us indicates that in 2011 Petitioner acknowledged that he had a girlfriend as well as a wife, his wife had been convicted of fraud relating to a government-assistance program in 2004, and she also had more recent convictions related to their children's truancy. In addition to the dearth of evidence supporting Petitioner's arguments, this part of the record undercuts his arguments on the irreparable-harm factor.

Finally, Petitioner's arguments regarding Directive 11061.1,[2] which sets forth DHS's policy for facilitating the return of certain aliens, are unavailing. "When Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, it repealed a prior statute that prevented aliens who leave the United States from continuing to seek review of their removal orders." *Sarkisov v. Bondi*, 138 F.4th 976, 979 (6th Cir. 2025). Thus, "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435.

Petitioner cannot avoid that binding precedent by relying on a 2012 letter submitted to the Supreme Court by a Deputy Solicitor General following the decision in *Nken*. The

---

[2] ICE Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens (DHS 2012), [https://perma.cc/66RH-44PU].

8

letter clarified the Executive Branch's procedures for facilitating an alien's return and highlighted Directive 11061.1. It did not somehow abrogate *Nken*, which courts have continued to rely upon. *See Sarkisov*, 138 F.4th at 979; *Sarr v. Garland*, 50 F.4th 326, 335 (2d Cir. 2022). Therefore, counsel's briefs lacked evidence and fell far short of establishing irreparable harm.

## C.

The merged interests of the public and the Executive Branch do not support a stay. "There is always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. There is also "a strong public interest in bringing litigation to a close as promptly as is consistent with a fair opportunity to present claims." *Sevoian v. Ashcroft*, 290 F.3d 166, 172 (3d Cir. 2002). Petitioner has had several such opportunities, and they were fair.

The public's "interest in prompt removal" is also "heightened" where, as here, an alien "has substantially prolonged his stay by abusing the processes provided to him." *Nken*, 556 U.S. at 436. Specifically, for about a year after the removal order, Petitioner told DHS that he would voluntarily depart the United States. He did not. When he moved from New York to Pennsylvania, he did not notify DHS of his whereabouts—in apparent violation of 8 U.S.C. §§ 1305(a) and 1306(b). He continued to pursue meritless challenges to his removal order, which have now dragged on for more than 15 years. Removals are "necessary in order to bring to an end *an ongoing violation* of United States law." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999). The public interest does not favor an alien who approaches the removal process in this manner.

9

Especially in a case like this involving a fourth challenge to a removal order, the Executive Branch's "legitimate interest in finality, which is heightened in removal proceedings," cannot be overlooked. *Villatoro-Ochoa v. Lynch*, 844 F.3d 993, 994 (8th Cir. 2017). A stay that results in an "inability to enforce its duly enacted plans clearly inflicts irreparable harm" on the Executive Branch. *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Kingdom v. Trump*, 2026 WL 1905418, at *2 (D.C. Cir. 2026) ("[T]he Government is irreparably harmed by an improper intrusion by a federal court into the workings of a coordinate branch of the Government.").

At the fore here is the Executive Branch's "paramount interest in protecting" the "territorial integrity" of the United States. *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). Leaving in place a removal stay that is not warranted would give short shrift to the fact that "any policy toward aliens" is "intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952). These matters are so "exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* at 589.

The Executive Branch is one of those political branches. Article II vests the calibration of these policies in the President, as the democratically elected leader of a Branch that operates from the premise that "unity won out" at the Founding. *Slaughter*, 2026 WL 1855612, at *5. This is where the merger

10

of the public's interest with the government's interest is most apparent. An unnecessary judicial intrusion on an Executive Branch removal decision is in some ways an affront to the process the public uses to decide who is in charge of the political branches. Therefore, the interests of the public and the government favor vacatur of the stay.

* * *

Based on the current record, Petitioner does not establish that he is entitled to a stay of removal at this juncture. His showing is lacking with respect to each of the factors that *Nken* requires us to consider. We are therefore duty bound to vacate the stay.

## II.

Days before oral argument, Petitioner filed a motion to hold the case in abeyance pending the resolution of a new collateral attack on his New York conviction. We denied the motion. We now write to explain why.

Petitioner filed the collateral attack in December 2025, long after briefing was completed here and about two weeks after we called the case for argument. The order scheduling a hearing on the collateral attack indicated that the District Attorney did not oppose the requested relief as long as Petitioner pleaded guilty to second-degree criminal facilitation, in violation of N.Y. Penal Law § 115.05. It is hard to miss that the prosecutor is said to be willing to accept a plea that would be relevant to Petitioner's argument that there is no longer a basis for his removal. In this Court, Petitioner did nothing to dispel the appearance that the collateral attack was coordinated to facilitate additional delay of his removal. At argument,

11

Petitioner's counsel distanced himself from the new collateral attack and suggested that separate attorneys were pursuing arguments relating to ineffective assistance of counsel. To the extent that was true, the New York courts rejected Petitioner's ineffective-assistance arguments in 2014. *See People v. Aristy*, 979 N.Y.S.2d 634, 634 (N.Y. App. Div. 2014).

Regardless of what happened with the collateral attack, New York "does not have the authority to make immigration-law determinations." *Aristy-Rosa*, 994 F.3d at 117. The federal removal statute "does not bend to a state's retroactive expunction of a criminal record unless the nature of the expunction calls into doubt whether the alien is indeed guilty of criminal conduct." *Vasquez v. Garland*, 80 F.4th 422, 432 (2d Cir. 2023). That is because Petitioner's removal order is based on him having been "convicted" of a controlled-substance offense. 8 U.S.C. § 1227(a)(2)(B)(i). "Convicted" is a defined term in the federal statute. *Id.* § 1101(48). A former Attorney General has generously interpreted § 1101(48) to provide a state-court order relating to a collateral attack with "legal effect for immigration purposes" only if the order was "based on a procedural or substantive defect in the underlying criminal proceeding." *Matter of Thomas & Thompson*, 27 I. & N. Dec. 674, 675 (AG 2019). According to the Attorney General, there is no basis for avoiding removability where the order is "based on reasons unrelated to the merits," such as "an interest in avoiding an immigration consequence." *Id.* We agree. Petitioner did not demonstrate that his new collateral attack was related to the merits of his 1997 conviction.

Counsel's efforts to delay the oral argument came very close to crossing the line between zealous advocacy and bad-

faith dilatory frivolity.  Consequently, we denied the abeyance motion and moved forward with argument.

## III.

For the foregoing reasons, we will vacate the stay of removal effective immediately.  This step is necessary in order to end the unwarranted intrusion on the Executive Branch in this case.  An opinion will follow addressing Petitioner's challenge to the BIA's denial of his motions for reopening and reconsideration.

*Counsel for Petitioner*
David Kaplan     [Argued]
Law Offices of David Kaplan

*Counsel for Respondent*
Craig A. Newell, Jr.
Imran R. Zaidi    [Argued]
United States Department of Justice